IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROYAL NEIGHBORS OF AMERICA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3:18-cv-02001-L (BT) |
| KIDS KAMPUS CREATIVE LEARNING CENTER LLC, DIANN WOOD ROBERTSON, CHAD ROBERTSON, INDIVIDUALLY AND AS THE INDEPENDENT EXECUTOR OF THE ESTATE OF DALE EVANS ROBERTSON, DECEASED, LORI ROBERTSON, JARED ROBERTSON, and MATTHEW ROBERTSON, | § § § § § § § § § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this interpleader action are three motions filed by

Plaintiff Royal Neighbors of America: (1) Motion for Discharge and Attorneys' Fees

(ECF No. 29); (2) Motion to Dismiss First Amended Counterclaim (ECF No. 41);

and (3) Motion for Summary Judgment (ECF No. 57). Each motion represents a

different procedural vehicle by which Plaintiff seeks dismissal from this lawsuit.

For the reasons stated, the Court should grant Plaintiff's Motion for Summary

Judgment and dismiss with prejudice the Robertson Defendants' claims against

Plaintiff. Because this would dispose of all claims against Plaintiff, the Court

should further grant Plaintiff's Motion for Discharge and dismiss Plaintiff from this lawsuit. The Court should award Plaintiff costs and attorney's fees in the amount of $7,000.00. Finally, the Court should deny Plaintiff's Motion to Dismiss First Amended Counterclaim as moot.

### Background

Defendants Chad Robertson, Lori Robertson, Jared Robertson, and Matthew Robertson (the "Robertson Defendants") are Dale Robertson's ("Dale") surviving children. First Am. Counterclaim 3 (ECF No. 39). On January 23, 1998, Dale married Diann Robertson ("Diann"), who is not the Robertson Defendants' mother. *Id.* Dale and Diann, together with Diann's daughter and son-in-law, organized Kids Kampus Creative Learning Center, LLC ("KKCLC") on November 15, 2000. *Id.* At about that same time, Dale contracted with Royal Neighbors for a $200,000 life-insurance policy and named KKCLC as the primary beneficiary. *Id.*; *see also* Pl.'s App. 17 (ECF No. 29-4). KKCLC owned and operated child-care centers in Johnson and Tarrant County, Texas, until it sold them in 2016. First Am. Counterclaim 3. Dale's life-insurance policy provides "[t]he beneficiary is as stated in the application unless changed," and permits "[t]he Owner . . . [to] change the beneficiary without the consent of any such beneficiary." Pl.'s App. 30 (ECF No. 29-4). The policy also states that a proper written request is required to change the beneficiary and that no change will take place unless recorded. *Id.*

On September 24, 2004, Dale filled out "an official Royal Neighbors' 'Request for Change Form.'" First Am. Counterclaim 4.; *see also* Pl.'s App. 56 (ECF

No. 29-4). On the signed and witnessed form, Dale requested the beneficiary under his policy be changed to give 50% to First National Bank of Burleson, the lienholder for KKCLC, and 50% to Diann Robertson, Dale's spouse. First Am. Counterclaim 4; *see also* Pl.'s App. 56 (ECF No. 29-4). It is undisputed that Royal Neighbors did not record the form. Plaintiff contends this was because it "did not believe that Dale's requested listing of the bank as a beneficiary was necessary to secure the bank's interest as lienholder." First Am. Counterclaim 4. The Robertson Defendants allege that Dale was not aware that Royal Neighbors did not record the change of beneficiary and that, after Dale's submission of the 2004 change-of-beneficiary request, Diann represented that she was the policy's beneficiary. *Id.* Plaintiff, however, contends that it discussed Dale's 2004 change-of-beneficiary request with Diann and informed her that if it were recorded, First National Bank of Burleson would receive 50% of the remaining proceeds under the certificate in addition to the proceeds necessary to satisfy KKCLC's liabilities. Pl.'s Br. Support 8 (ECF No. 58). Royal Neighbors further contends that it sent two letters to Dale, one on October 29, 2004, and the other on December 6, 2004, explaining why his change-of-beneficiary request was not recorded and confirming that the beneficiary remained KKCLC. *Id.* 8-9.

Dale and Diann divorced on May 19, 2017, and on April 28, 2018, Dale died of cancer. First Am. Counterclaim 4. Chad Robertson was appointed independent executor of Dale's estate. *Id.* The Robertson Defendants informed Royal Neighbors that "any designation of Diann as beneficiary under any policy with Royal

Neighbors would be void as a matter of law in Texas." *Id.* 5. Royal Neighbors confirmed that KKCLC was the beneficiary under Dale's policy. *Id.* The Robertson Defendants assert that Diann is KKCLC's registered agent and sole manager. *Id.*

On August 1, 2018, Plaintiff filed its Interpleader Complaint seeking to deposit the policy proceeds into the Court's registry so that the Court could determine the proper beneficiary. *Id.* After the Court granted Plaintiff's motion to deposit the policy proceeds into the Court's registry, Plaintiff sought an agreed dismissal from the Robertson Defendants, Diann, and KKCLC. The parties tentatively agreed to the terms of a proposed stipulation and order of dismissal, but the Robertson Defendants requested to review a copy of Plaintiff's claim file before they executed the dismissal documents. In response, Plaintiff produced only certain "key documents," one of which referenced the 2004 Request for Change Form, leading the Robertson Defendants to believe Dale had requested the beneficiary be changed to Diann. *See* JSR. 2-3 (ECF No. 26). The Robertson Defendants explained the purported significance of the possible change in beneficiary:

> If the September 2004 change of designation form did request a change in beneficiary designation to Diann Robertson, the Estate and the Robertson Family Defendants contend it should have been recorded and effective as of the date of the request. Pursuant to Texas Family Code Section 9.301, at the time of Dale Robertson's death, DiAnn Robertson would be eliminated as a beneficiary as an ex-spouse and the Estate, or alternatively, the Robertson Family Defendants would be entitled to all or part of the Certificate proceeds.

4

*Id.* 3. Although Plaintiff declined to produce its entire claim file, it took the position that "Royal Neighbors never received a request from the Insured to change the beneficiary from KKCLC." *Id.* 1.

At a status conference on October 24, 2018, counsel for the Robertson Defendants represented that their clients would likely agree to dismiss Plaintiff from this lawsuit if the claim file established that the insurance company never received a request to change the beneficiary from KKCLC. The parties, thus, agreed to continue their efforts to negotiate the terms of an agreed stipulation and order of dismissal and to file their proposed agreed order by November 19, 2018. The parties further agreed that Plaintiff would produce the entire claim file by November 19, 2018. The Court memorialized the parties' agreement in its Scheduling Order filed the same day as the status conference. Sched. Ord. 1 (ECF No. 28). Plaintiff produced the claim file on November 19, 2018. Upon review of the file, the Robertson Defendants discovered the 2004 change-of-beneficiary request form completed by Dale. The Robertson Defendants determined they may have claims against Royal Neighbors for its refusal to record the change of beneficiary form and declined to execute Plaintiff's proposed order of dismissal.

Unable to obtain a dismissal by agreement, Plaintiff filed its Motion for Discharge on January 9, 2019, asserting it was entitled to dismissal, in part, because "none of the Defendants have asserted any affirmative claims against Royal Neighbors." Discharge Mot. 2 (ECF No. 29). On January 30, 2019, the

Robertson Defendants timely filed a response in opposition to the motion (ECF No. 34) and also an original counterclaim (ECF No. 33), asserting affirmative claims against Royal Neighbors. When Plaintiff moved to dismiss the original counterclaim, *see* Mot. (ECF No. 36), the Robertson Defendants filed their First Amended Counterclaim, which is the subject of Plaintiff's pending Motion to Dismiss (ECF No. 41) filed March 7, 2019.

In their First Amended Counterclaim, the Robertson Defendants seek a declaratory judgment and bring claims for negligence and breach of contract against Royal Neighbors. First Am. Counterclaim 6-9. The Robertson Defendants assert that Royal Neighbors was required to record Dale's 2004 change-of-beneficiary request under the policy and that, as a result, they are entitled to the proceeds because "KKCLC and Diann are both ineligible to receive the Policy proceeds under Texas law and/or under the Agreed Final Decree of Divorce." *Id.* 6-7. Plaintiff argues the Robertson Defendants' counterclaims should be dismissed for the following reasons: (1) interpleader was proper, and discharge is appropriate; (2) the Robertson Defendants lack standing; (3) the Robertson Defendants' claims for declaratory relief are duplicative of Plaintiff's claims; and (4) the Robertson Defendants' claims are barred by limitations.

Before the Court could reach Plaintiff's Motion to Dismiss, Plaintiff filed the pending Motion for Summary Judgment (ECF No. 57) pursuant to the deadlines established by the Court's Scheduling Order. Plaintiff moves for summary judgment on the Robertson Defendants' First Amended Counterclaim on four

grounds: (1) interpleader, (2) the economic-loss rule, (3) standing, and (4) limitations. All of Plaintiff's motions are now fully briefed. With respect to the pending summary-judgment motion, KKCLC does not oppose the relief Plaintiff requests[1]. KKCLC Resp. (ECF No. 68). Given these circumstances, the Court finds that disposition of Plaintiff's Motion for Summary Judgment would simplify the case, and, thus, it considers that motion first.

## Jurisdiction

To the extent Plaintiff brings its Interpleader Complaint under 28 U.S.C. § 1335, statutory interpleader, the Court does not have subject-matter jurisdiction under § 1335. Compl. 1 (ECF No. 1). To bring an action under § 1335, there must be "[t]wo or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 . . . [who] claim to be entitled to . . . benefits arising by virtue of any . . . certificate, policy, or other instrument." 28 U.S.C. § 1335(a)(1); *see also Fresh Am. Corp. v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 411, 414 (N.D. Tex. 2005) ("Statutory interpleader is proper when a (1) stakeholder has a single fund worth at least $500; (2) where two or more adverse claimants with diverse citizenship are competing for that fund; and (3) the stakeholder has deposited the fund in the Court's registry."). Here, it is undisputed that all Defendants are citizens of Texas. Because the claimants are not diverse, Plaintiff's

---

[1] KKCLC states, however, that it is opposed to any attorney's fees and costs beyond the amount that Plaintiff requests in its Motion for Discharge and Attorneys' Fees (ECF No. 29). KKCLC Resp.

interpleader claim is not proper under § 1335. Instead, the Court has diversity jurisdiction in this case, and interpleader is proper under Rule 22. The Court has diversity jurisdiction because Plaintiff is a citizen of Illinois, and the amount in controversy is more than $75,000. 28 U.S.C. § 1332(a). "A court may convert a statutory interpleader suit to a rule interpleader suit on its own motion." *Ramirez v. Aetna Life Ins. Co.*, 2007 WL 9718516, at *2 (N.D. Tex. Nov. 30, 2007) (citing *Truck-A-Tune, Inc. v. Re*, 23 F.3d 60, 61 (2d Cir. 1994)). Rule 22 permits interpleader actions but does not confer jurisdiction. *Perkins State Bank v. Connolly*, 632 F.2d 1306, 1310 n.3 (5th Cir. 1980) (citing 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1703 (1972)) ("But 'rule interpleader' may only be invoked where all jurisdictional requisites otherwise are met; it is not dependent, therefore, on any special statutory grant of jurisdiction or venue."); *see* Fed. R. Civ. P. 22(a)(1). Therefore, the Court converts Plaintiff's statutory interpleader suit to one for rule interpleader.

## Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted). The movant's burden can be satisfied by demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial.

8

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); Fed. R. Civ. P. 56(e)). The party opposing the summary-judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *Esquivel v. McCarthy*, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)). "Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Id.* (citing *Ragas*, 136 F.3d at 458; *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)). All evidence must be viewed in the light most favorable to the party opposing the summary-judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)).

## Analysis

In the Robertson Defendants' First Amended Counterclaim, they assert negligence and breach-of-contract claims against Royal Neighbors. They contend that Royal Neighbors acted negligently when it breached its duty to Dale Robertson by not recording his "proper written request for a change of beneficiary." First Am.

Counterclaim 8. Under Texas law, no tort duty exists "'when the only injury claimed is one for economic damages recoverable under a breach of contract claim.'" *Wansey v. Hole*, 379 S.W.3d 246, 248 (Tex. 2012) (per curiam) (quoting *Sterling Chem. Inc. v. Texaco Inc.,* 259 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)); *see also LAN/STV v. Martin K. Eby Const. Co.*, 435 S.W.3d 234, 242 n. 35 (Tex. 2014); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991) ("Bell's duty to publish DeLanney's advertisement arose solely from the contract. . . . Although DeLanney pleaded his action as one in negligence, . . . [w]e hold that Bell's failure to publish the advertisement was not a tort. Under our analysis in *Reed,* DeLanney's claim was solely in contract."). Because Royal Neighbors' duty to Dale Robertson arose out of the contract, Dale's life-insurance policy, and Defendants seek "damages sustained as a result of Royal Neighbors' breach" of that duty, the Court considers Defendants' claims to sound only in contract. The Court, therefore, will not consider any ground for summary judgment based solely on a negligence claim.[2]

## I. Limitations

Royal Neighbors is entitled to summary judgment on all claims asserted against it in the Robertson Defendants' First Amended Counterclaim because they are barred by limitations. When a cause of action accrues is normally a question of

---

[2] This includes Plaintiff Royal Neighbors' argument that it is entitled to summary judgment on Defendants' negligence claim under the economic-loss rule. Pl.'s Br. Support 20.

law. *Exxon Corp. v. Emerald Oil & Gas Co.,* 348 S.W.3d 194, 202 (Tex. 2011) (citing *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 221 (Tex. 2003); *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex. 1990)). Under Texas law, "[c]auses of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy." *Id.* (citing *Knott,* 128 S.W.3d at 221; *Johnson & Higgins of Tex. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 514 (Tex. 1998)). In other words, "a cause of action accrues when a wrongful act causes a legal injury"; this is the case "regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Knott,* 128 S.W.3d at 221 (citation omitted).

The Robertson Defendants' First Amended Counterclaim brings negligence and breach-of-contract claims against Royal Neighbors arising out of its failure to record Dale's September 24, 2004 request to change the beneficiary on his life-insurance policy. First Am. Counterclaim 4, 6-9. A four-year statute of limitations governs breach-of-contract claims. *See* Tex. Civ. Prac. & Rem. Code § 16.051. It is uncontested that Royal Neighbors did not record Dale Robertson's September 24, 2004 change-of-beneficiary request. Pl.'s App. 73-74, 78 (ECF No. 29-4). Whether or not Royal Neighbors' recording failure constituted a breach of contract, the facts that could have authorized Dale to seek a judicial remedy for breach came into existence in 2004. Accordingly, any breach-of-contract claim arising out of Royal Neighbors' failure to record Dale Robertson's September 24, 2004 change-of-beneficiary request is time-barred.

Nonetheless, the Robertson Defendants contend that their claims are not time-barred because the discovery rule applies. The discovery rule "defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." *Brandau v. Howmedica Osteonics Corp.*, 439 F. App'x 317, 319 (5th Cir. 2011) (per curiam) (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 455 (Tex. 1996)) (internal quotation marks omitted); *see also Archer v. Tregellas*, 566 S.W.3d 281, 290 (Tex. 2018). "Texas courts have only employed the 'discovery rule exception in certain limited circumstances.'" *Brandau*, 439 F. App'x at 319 (quoting *Computer Assocs.,* 918 S.W.2d at 456); *see also Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (per curiam) ("While the Legislature's silence on accrual in most cases leaves that question to the courts, we have restricted the discovery rule to exceptional cases to avoid defeating the purposes behind the limitations statutes." (citation omitted)). "[F]or the discovery rule to apply, 'the nature of the injury must be inherently undiscoverable and the injury itself must be objectively verifiable.'" *Brandau*, 439 F. App'x at 319 (quoting *Barker v. Eckman,* 213 S.W.3d 306, 312 (Tex. 2006)). "'An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence.'" *Via Net,* 211 S.W.3d at 313-14 (quoting *Wagner & Brown, Ltd. v. Horwood,* 58 S.W.3d 732, 734-35 (Tex. 2001)). Texas law determines "whether an injury is inherently undiscoverable . . . 'on a categorical rather than a case-specific basis.'" *Brandau*, 439 F. App'x at 321

(quoting *Via Net*, 211 S.W.3d at 314). Thus, a court's inquiry need not focus on "when a particular injury was actually discovered in any particular case, but rather whether that case is of the type to which the discovery rule applies based on whether the policy reasons behind the rule are served by applying the rule in that type of case." *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122 (Tex. 2001) (citations omitted). In other words, the Court must determine whether the Robertson Defendants' claims "[are] in a category of injuries that have been identified as inherently undiscoverable under Texas law." *Brandau*, 439 F. App'x at 322.

Texas law does not consider contract breaches to be inherently undiscoverable, categorically. *See Via Net*, 211 S.W.3d at 314-15 ("We do not hold today that the discovery rule can never apply to breach of contract claims. . . . But those cases should be rare . . . ."). In *Via Net*, after the four-year limitations period had run, Safety Lights filed a breach-of-contract lawsuit against Via Net for "failing to add it as an additional insured." *Id.* at 312. Though Safety Lights obtained a certificate of insurance listing it as an additional insured, "the certificate warned that it conferred no rights and was limited by the underlying policy." *Id.* at 314. And, while the Court noted that "the facts of this specific case do not govern the categorical inquiry," Safety Lights learned of the breach "within a few months after it occurred." *Id.* The Texas Supreme Court reasoned that due diligence requires contracting parties to protect their own interests and might "include asking a contract partner for information needed to verify contractual performance." *Id.* (citing *Wagner & Brown,* 58 S.W.3d at 736; *HECI Exploration Co. v. Neel*, 982

S.W.2d 881, 886 (Tex. 1998)). "But failing to even ask for such information is not due diligence," and "those who take such certificates at face value do so at their own risk." *Id.* Accordingly, because "diligent contracting parties should generally discover any breach during the relatively long four-year period provided for such claims," the Court held the discovery rule did not apply in *Via Net. Id.* at 315.

The Robertson Defendants offer no evidence to show that this is the "rare" breach-of-contract case in which the injury could not have been discovered despite due diligence. In fact, the summary-judgment evidence indicates that Royal Neighbors sent two letters to Dale Robertson, one on October 29, 2004, and another on December 6, 2004, notifying him that his change-of-beneficiary request had not been recorded and that KKCLC remained the beneficiary. Pl.'s App. 73-74, 78 (ECF No. 29-4). Defendants maintain, however, that "there is no evidence . . . that Dale received these notices," and that he "did not know Kids Kampus remained the beneficiary despite his proper written request to change the beneficiary designation in 2004, until early 2017." Defs.' Br. Support 24 (ECF No. 72). But Texas law analyzes whether an injury is inherently undiscoverable on a categorical, rather than a case-by-case, basis. *Brandau*, 439 F. App'x at 321. Thus, when Dale Robertson actually discovered Royal Neighbors' failure to record does not determine whether the injury could have been discovered with due diligence. Because the Robertson Defendants point to no evidence, creating a fact issue as to why this purported breach of contract could not have been discovered with due diligence, the Court finds no basis for applying the discovery rule to the Robertson

14

Defendants' counterclaims. *See AIG Specialty Ins. Co. v. Tesoro Corp.*, 840 F.3d 205, 212 (5th Cir. 2016) ("The Tesoro Parties were unable to point to any basis for concluding that the injury in this case—the alleged mistake over which entity was covered—is 'inherently undiscoverable.'"). Accordingly, Royal Neighbors is entitled to summary judgment on the Robertson Defendants' counterclaims because they are barred by limitations.

## II. Standing

Royal Neighbors is also entitled to summary judgment on the Robertson Defendants' counterclaims because they lack standing to bring those claims. Under Texas law, "a presumption exists that parties contracted for themselves unless it 'clearly appears' that they intended a third party to benefit from the contract." *MCI Telecommc'ns Corp. v. Tex. Utilities Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999) (citing *Corpus Christi Bank & Trust v. Smith,* 525 S.W.2d 501, 503-04 (Tex. 1975); *Knox v. Ball,* 191 S.W.2d 17, 21 (Tex. 1945); *M.J.R. Corp. v. B & B Vending Co.,* 760 S.W.2d 4, 12 (Tex. App.—Dallas 1988, writ denied)); *accord Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 635 n.39 (Tex. 2018). "The fact that a person might receive an incidental benefit from a contract to which he is not a party does not give that person a right of action to enforce the contract." *MCI,* 995 S.W.2d at 651 (citations omitted); *see also Irwin v. Irwin*, 307 S.W.3d 383, 386 (Tex. App.—San Antonio 2009, pet denied) ("Even if an argument could be made that the estate had standing to enforce the terms of the divorce decree, the estate

15

was not a designated beneficiary under the insurance policy and had no legal claim to the proceeds of the policy.").

Here, Dale Robertson contracted with Royal Neighbors for the purchase of life insurance. Pl.'s App. 16. (ECF No. 29-4). The policy indicates, "[t]his contract is between the Society and the Owner," confirms "[t]he Insured shall be the Owner," and clarifies the Insured is Dale Robertson. *Id.* 21, 23, 30. The Robertson Defendants were not a party to that contract. *See id.* Dale designated KKCLC as the beneficiary under the policy on January 15, 2001, prior to the 2004 change-of-beneficiary request. *Id.* 17. Even if Royal Neighbors had recorded Dale's request, the beneficiaries would have been First National Bank of Burleson and Diann Robertson. *Id.* 17, 66-74; *see also* First Am. Counterclaim 4. There is no evidence indicating that Dale intended to make any of the Robertson Defendants beneficiaries under the contract. Because the Robertson Defendants are not parties to the contract, nor does it clearly appear that Dale intended them to be third-party beneficiaries of the contract, they are unable to enforce it. In other words, even if Defendants' breach-of-contract claim were not barred by limitations, they lack standing to bring such a claim. Accordingly, Plaintiff is entitled to summary judgment on Defendants' counterclaims because they lack standing to bring those claims.

### III. Interpleader

Plaintiff also is entitled to summary judgment on interpleader grounds. An interpleader action is a two-step proceeding. *Rhoades v. Casey*, 196 F.3d 592, 600

16

(5th Cir. 1999); *Fresh Am. Corp.*, 393 F. Supp. 2d at 415. At the first step, the court decides whether "a proper case for interpleader is presented"; that is, whether the party invoking the remedy can compel the claimants to litigate their claims to the stake in one proceeding. *Fresh Am. Corp.*, 393 F. Supp. 2d at 415 (citing *Rhoades*, 196 F.3d at 600). The court determines whether the requirements for an interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund. *Rhoades*, 196 F.3d at 600 (citing Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1714 (2d 1986)). The burden is on the party seeking interpleader to demonstrate that the requirements are satisfied. *Fresh Am. Corp.,* 393 F. Supp. 2d at 414 (citing *Interfirst Bank Dall., N.A. v. Purolator Courier Corp.,* 608 F. Supp. 351, 353 (N.D. Tex. 1985)). If the court finds that the interpleader action has been properly brought, and the interpleader-plaintiff is disinterested, the court may issue an order discharging the interpleader-plaintiff and proceed to the second stage to decide the respective rights of the claimants. *Id.* at 415 (citing *Rhoades*, 196 F.3d at 600). "When there is no genuine issue of material fact[,] the second stage may be adjudicated at summary judgment, and if there is a trial[,] each claimant must prove their right to the fund by a preponderance of the evidence." *Rhoades*, 196 F.3d at 600 (citation omitted).

In this case, Plaintiff has met its burden to show there is a single fund comprising the life insurance policy proceeds at issue, and KKCLC and the Robertson Defendants are adverse claimants to that fund. The different claimants

17

with competing claims for the proceeds may expose Plaintiff to multiple liabilities. Plaintiff, thus, properly brought this interpleader action. Further, because Plaintiff has no interest in the policy proceeds, it is entitled to summary judgment and may be discharged from this lawsuit. The specific rights of KKCLC and the Robertson Defendants are before the Court on separate motions for summary judgment, which the Court will consider later, at the second stage of this interpleader.

## IV. Fees and Moot Motions

The Court has "discretion to award costs, including reasonable attorney's fees, to a disinterested stakeholder in an interpleader action whenever it is fair and equitable to do so." *Wells Fargo Bank, N.A. v. Lane Grp., LLC*, 2019 WL 1099992, at *2 (N.D. Tex. Feb. 13, 2019), *adopted by* 2019 WL 1099547 (N.D. Tex. Mar. 8, 2019) (citing *Rhoades*, 196 F.3d at 603); *Fresh Am. Corp.*, 393 F. Supp. 2d at 417; *Noeller v. Metro. Life Ins. Co.*, 190 F.R.D. 202, 206-07 (E.D. Tex. 1999)). It is not automatic that the successful interpleader-plaintiff should be awarded attorney's fees, and any fees awarded should be "modest." *Fresh Am. Corp.*, 393 F. Supp. 2d at 417 (citations omitted). To determine whether to award fees and costs to an interpleader-plaintiff, the Court should consider "(1) whether the case is simple; (2) whether the interpleader-plaintiff performed any unique services for the claimants or the court; (3) whether the interpleader-plaintiff acted in good faith and with diligence; (4) whether the services rendered benefited the interpleader-plaintiff; and (5) whether the claimants improperly protracted the proceedings."

*Royal Indem. Co. v. Bates*, 307 F. App'x 801, 806 (5th Cir. 2009) (per curiam) (citation omitted).

This is a simple case; the facts are unremarkable, and the legal issues are not complicated. Plaintiff has not performed any unique services for the claimants or the Court. While the Court does not find that Plaintiff failed to act in good faith or with diligence, it notes that these proceedings have been protracted by Plaintiff's initial failure to produce the 2004 change-of-beneficiary request form and its representation that "Royal Neighbors never received a request from the Insured to change the beneficiary from KKCLC." JSR 1. Counsel for the Robertson Defendants justifiably insisted on adequate time to review the claim file before signing Plaintiff's proposed dismissal order. If anything, Plaintiff prematurely filed its Motion for Discharge before opposing counsel had a full and fair opportunity to consider the claim file. In view of all the relevant factors, the Court should exercise its discretion to award Plaintiff attorney's fees, but only in the modest amount of $7,000.00—which is the amount that KKCLC represented it would be willing to pay before the protracted motion practice ensued. KKCLC Resp. Discharge Mot. 1 (ECF No. 31); KKCLC Resp. (ECF No. 68).

## RECOMMENDATION

For the foregoing reasons, the Court should GRANT Plaintiff Royal Neighbors of America's Motion for Summary Judgment and DISMISS with prejudice the Robertson Defendants' claims against Plaintiff. (ECF No. 57). Because this would dispose of all claims against Plaintiff and Plaintiff is entitled to

19

summary judgment on interpleader grounds, the Court should GRANT Plaintiff's

Motion for Discharge and Attorneys' Fees (ECF No. 29) and DISMISS Plaintiff

from this lawsuit, awarding Plaintiff costs and attorney's fees in the amount of

$7,000. The Court should DENY Plaintiff's Motion to Dismiss First Amended

Counterclaim (ECF No. 41) as MOOT.

**SO RECOMMENDED**.

August 21, 2019.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).