IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHAD ROBERTSON, Individually and as Independent Executor of the Estate of Dale Evans Robertson, Deceased, LORI ROBERTSON, JARED ROBERTSON, and MATTHEW ROBERTSON, | § § § § § § § | |
| Cross-Plaintiffs, | § § | Case No. 3:18-cv-02001-L-BT |
| v. | § § | |
| KIDS KAMPUS CREATIVE LEARNING CENTER, LLC, and DIANN WOOD ROBERTSON, | § § § § | |
| Cross-Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this interpleader action are two motions (1) a Motion for Summary Judgment filed by Kids Kampus Creative Learning Center, LLC (ECF No. 54) and (2) a Motion for Partial Summary Judgment filed by Chad Robertson, individually and as the independent executor of the Estate of Dale Evans Robertson, deceased, Lori Robertson, Jared Robertson, and Matthew Robertson (the "Robertson children") (ECF No. 59). For the reasons stated, the Court should DENY KKCLC's Motion and GRANT the Robertson children's Motion.

**Background**

This is a dispute over life insurance proceeds between Dale Robertson's surviving children and a limited liability company owned, in part, by Dale's ex-

1

wife, Diann Robertson, who is not the Robertson children's mother. First Am. Crossclaim 3 (ECF No. 40).

Dale married Diann on January 23, 1998. *Id.* Almost three years later, on November 15, 2000, Dale and Diann, together with Diann's daughter and son-in-law, organized Kids Kampus Creative Learning Center, LLC (KKCLC). *Id.* KKCLC owned and operated child-care centers in Johnson and Tarrant County, Texas, until it sold them in 2016. *Id.* At about the time KKCLC was formed, Dale contracted with Royal Neighbors of America for a $200,000 life-insurance policy and named KKCLC as the primary beneficiary. *Id.*; *see also* Robertson Defs.' App. 1 at 17 (ECF No. 61-1); KKCLC App. 11 at 17 (ECF No. 56-11). Dale's life-insurance policy provides "[t]he beneficiary is as stated in the application unless changed," and permits "[t]he Owner [to] change the beneficiary without the consent of any such beneficiary." Robertson Defs.' App. 1 at 30; KKCLC App. 11 at 30. The policy also states that a proper written request is required to change the beneficiary and that no change will take place unless recorded. Robertson Defs.' App. 1 at 30; KKCLC App. 11 at 30.

On September 24, 2004, Dale filled out "an official Royal Neighbors' 'Request for Change Form.'" First Am. Crossclaim 4; *see also* Robertson Defs.' App. 3 at 9 (ECF No. 61-3); KKCLC App. 11 at 56. On the signed and witnessed form, Dale requested the beneficiary under his policy be changed to give 50% to First National Bank of Burleson, a lender to KKCLC and lienholder with respect to the policy, and 50% to Diann, to whom Dale was married at the time. First Am.

Crossclaim 4; *see also* Robertson Defs.' App. 3 at 9; KKCLC App. 11 at 56. It is undisputed that Royal Neighbors did not record the form. Royal Neighbors later explained this was because it "did not believe that Dale's requested listing of the bank as a beneficiary was necessary to secure the bank's interest as lienholder." First Am. Crossclaim 4.

Dale and Diann divorced on May 19, 2017, and on April 28, 2018, Dale died of cancer. *Id.* 4. Chad Robertson was appointed independent executor of Dale's estate. *Id.* 4-5. The Robertson children informed Royal Neighbors that "any designation of Diann as beneficiary under any policy with Royal Neighbors would be void as a matter of law in Texas," but Royal Neighbors advised that KKCLC was the beneficiary under Dale's policy. *Id.* 5. The Robertson children assert that Diann is KKCLC's registered agent and sole manager. *Id.*

On August 1, 2018, Royal Neighbors filed an Interpleader Complaint seeking to deposit the policy proceeds into the Court's registry so that the Court could determine the proper beneficiary. *Id.* KKCLC and the Robertson children filed crossclaims for declaratory judgment. *Id.* 6; KKCLC Answer & Crossclaim 5 (ECF No. 12).

KKCLC and the Robertson children both now move for summary judgment on their declaratory-judgment crossclaims, requesting the Court declare the parties' legal relationships to the policy's proceeds under 28 U.S.C. § 2201. Diann

does not move for summary judgment or seek relief from the Court.[1] KKCLC filed a Response to the Robertson children's Motion, and the Robertson children filed a Reply (ECF Nos. 66 and 73, respectively). Likewise, the Robertson children filed a Response to KKCLC's Motion (ECF No. 62), but KKCLC did not file a reply, and the time for doing so has expired. Both motions are therefore fully briefed and ripe for determination.

## Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted). The movant's burden can be satisfied by demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); Fed. R.

---

[1]"DiAnn Robertson Dirik, formerly DiAnn Robertson, . . . does not claim an interest in the proceeds of the interpleader." Diann Resp. 1 (ECF No. 67).

Civ. P. 56(e)). The party opposing the summary-judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *Esquivel v. McCarthy*, 2016 WL 6093327, at \*2 (N.D. Tex. Oct. 18, 2016) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)). "Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Id.* (citing *Ragas*, 136 F.3d at 458; *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)). All evidence must be viewed in the light most favorable to the party opposing the summary-judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)).

## Analysis

An interpleader action is a two-step proceeding. *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999); *Fresh Am. Corp. v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 11, 415 (N.D. Tex. 2005). At the first step, the court decides whether "a proper case for interpleader is presented"; that is, whether the party invoking the remedy can compel the claimants to litigate their claims to the stake in one proceeding. *Fresh Am. Corp.*, 393 F. Supp. 2d at 415 (citing *Rhoades*, 196 F.3d at 600). The court determines whether the requirements for an interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund. *Rhoades*, 196 F.3d at 600 (citing Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1714 (2d

1986)). The burden is on the party seeking interpleader to demonstrate that the requirements are satisfied. *Fresh Am. Corp.*, 393 F. Supp. 2d at 414 (citing *Interfirst Bank Dall., N.A. v. Purolator Courier Corp.*, 608 F. Supp. 351, 353 (N.D. Tex. 1985)). If the court finds that the interpleader action has been properly brought, and the interpleader-plaintiff is disinterested, the court may issue an order discharging the interpleader-plaintiff and proceed to the second stage to decide the respective rights of the claimants. *Id.* at 415 (citing *Rhoades*, 196 F.3d at 600). "When there is no genuine issue of material fact[,] the second stage may be adjudicated at summary judgment, and if there is a trial[,] each claimant must prove their right to the fund by a preponderance of the evidence." *Rhoades*, 196 F.3d at 600 (citation omitted).

In this case, the Court already found that Royal Neighbors, the interpleader-plaintiff, properly presented a case for interpleader under step one and dismissed Royal Neighbors. FCR 20 (ECF No. 75); Order Accepting 2 (ECF No. 76); Sept. 6, 2019 J. 1 (ECF No. 77). Accordingly, the Court now turns to the second stage and the parties' cross-motions for summary judgment, requesting the Court determine their rights with respect to the policy. *See* 28 U.S.C. § 2201(a) ("[A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration[.]"). The Court will first address the Robertson children's "Motion for Partial Summary Judgment" before turning to KKCLC's Motion.

## I. Robertson Children's Motion for Partial Summary Judgment

The Robertson children style their Motion, a "Motion for Partial Summary Judgment," and request that the Court "declar[e] Chad Robertson, Lori Robertson, Jared Robertson, and Matthew Robertson the beneficiaries under Royal Neighbors' term life certificate no. 10030439 insuring the life of Dale Evans Robertson" and "direct[ ] the Court Clerk to pay the life insurance proceeds in the registry of the Court, plus interest, to Chad Robertson, Lori Robertson, Jared Robertson, and Matthew Robertson in equal payments[.]" Robertson Defs.' Mot. Summ. J. 2 (ECF No. 59). But, in light of this requested relief and the Court's prior dismissal of the Robertson children's counterclaims against Royal Neighbors, the Court determines that their Motion, if granted, would dispose of the remainder of the case in full. The Court, therefore, refers to the Robertson children's Motion as a Motion for Summary Judgment. For the following reasons, the Court recommends granting the Motion for Summary Judgment and declaring the Robertson children to be the proper beneficiaries under the policy.

### A.

The Robertson children argue they are entitled to summary judgment and the policy's proceeds because: (1) Royal Neighbors should have recorded Dale Robertson's 2004 request-for-change form, which would have taken effect the day it was signed; (2) its failure to record that form is not "a basis for rendering it ineffective"; and (3) Dale and Diann's divorce divested Diann of her beneficiary

status, entitling the Robertson children to the policy proceeds. Robertson Defs.' Mot. Summ. J. Br. 10, 13, 14 (ECF No. 60).  The Court agrees.

Under Texas law, "[a]n insurance policy is a contract between the insurer and the insured/owner of the policy." *Prudential Ins. v. Durante*, 443 S.W.3d 499, 506 (Tex. App.—El Paso 2014, pet. denied) (citing *Hernandez v. Gulf Grp. Lloyds,* 875 S.W.2d 691, 692 (Tex. 1994)). A policy's terms govern the owner's right to change beneficiaries. *State Farm Life Ins.  v. Martinez,* 216 S.W.3d 799, 802 (Tex. 2007) (citing Tex. Ins. Code § 1103.055(a); *Volunteer State Life Ins.  v. Hardin*, 197 S.W.2d 105, 107 (Tex. 1946)). When the insured substantially complies with the policy's requirements for beneficiary changes, "the insurer must honor the request and effect the change." *Durante*, 443 S.W.3d at 507 (citing *Stewart v. Mut. Benefit Life Ins.*, 522 S.W.2d 257, 260 (Tex. Civ. App.—Amarillo 1975, writ ref'd n.r.e.)); *see also State Farm Life Ins.  v. Martinez*, 174 S.W.3d 772, 779 (Tex. App.—Waco 2005), *rev'd on other grounds*, 216 S.W.3d 799 (Tex. 2007) (citing *Salvato v. Volunteer State Life Ins.*, 424 S.W.2d 1, 5 (Tex. Civ. App.—Houston [1st Dist.] 1968, no writ)) ("An insurer's right to question the validity of the policy owner's change in beneficiary is determined by the policy's provisions, and the insurer's duty is to comply with a request that complies with the policy."). Substantial compliance, however, cannot be reduced to a "hard and fast rule," and "each case must be decided on its own set of facts as to what was done or caused to be done by the insured." *Durante*, 443 S.W.3d at 507 (citing *Porter v. Garner*, 386 S.W.2d 618, 620 (Tex. Civ. App.—El Paso 1965, writ ref'd n.r.e.)). "[W]hen the terms of the

policy of insurance, or the constitution or bylaws of the fraternal insurance association, define the method by which the insured may change the beneficiary, a change is not accomplished unless the insured has substantially complied with the method designated, or . . . unless he has done all that he could reasonably have done to perfect a change." *Tips v. Sec. Life & Accident Co.*, 191 S.W.2d 470, 471 (Tex. 1945) (internal citation omitted). Texas "courts employ the equitable tool of substantial compliance when an insurance company has *not* accepted or, often times, not received, a change of beneficiary request prior to the policyholder's death." *W. Coast Life Ins. v. Fale*s, 2015 WL 225065, at *4 (W.D. Tex. Jan. 14, 2015) (citations omitted, emphasis in original).

When a policy-holder substantially complies with her policy's requirements to change the beneficiary, an insurance company has a contractual duty to effect that change and may not "improperly impose[ ] its consent or approval." *Martinez*, 174 S.W.3d at 779. In *Martinez*, the insured, Ed, was part of an "Agreement Incident to Divorce" (AID), which required him to make monthly contractual alimony payments to his ex-wife, Linda, the initial beneficiary under his life-insurance policy. *Id.* at 776-77. The AID further provided that as long as the alimony was payable, Ed would "name Linda as irrevocable beneficiary to a portion of the proceeds" under his life-insurance policy, and, so long as he maintained Linda as the beneficiary in an amount sufficient to pay the outstanding alimony payments, "he may name as a beneficiary for the remainder . . . whomever he may choose." *Id.* at 777. Ed's policy provided that a change-of-beneficiary request would

"take effect the date the request is signed," and in August 2002, Ed signed a change-of-beneficiary form naming his new wife, Toni, as beneficiary. *Id.* The insurance company sent a letter to Ed stating it was unable to process his request because "it [was] prohibited by [his] divorce decree" and that "[t]he beneficiary designation for [his] policy remain[ed] unchanged." *Id.* at 777-78.

The court held that as of the date Ed signed the request, Toni was the proper beneficiary under the policy, subject to Linda's interest in the policy proceeds securing the amount of alimony Ed owed her, because "any other result would defeat the policy's language, Ed's intent, and the AID's purpose." *Id.* at 781. "As long as Ed substantially complied with the policy requirements in requesting a beneficiary change, [the insurance company] had a contractual duty, ministerial in nature, to honor his request and give it effect." *Id.* at 780. (citing *Stewart,* 522 S.W.2d at 260 (policy language that request be satisfactory to insurer did not require insurer's consent as condition for beneficiary change); *Gladding v. Prudential Ins.* , 521 S.W.2d 736, 737-39 (Tex. Civ. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.) (insured's beneficiary change naming her parents with initials and surname substantially complied with policy and was effective when received by insurer, despite return of form to insured for correction in accordance with form's instructions to use full names)).

Even when an insurance policy contains broad language that a change-of-beneficiary request must "be in a form that meets [the insurer's] needs," when a policy-holder's request is unambiguous and substantially complies with the

policy's requirements, it is effective. *See Durante*, 443 S.W.3d at 508-09. In *Durante*, the insured, Dr. Garcia, executed a change-of-beneficiary form making his wife a beneficiary of 50% of the policy's proceeds and his children the beneficiaries of the remaining 50%. *Id.* at 502. Dr. Garcia's policy provided that the "policy owner could change . . . the beneficiary, by sending [the company] a request 'in a form that meets [its] needs,'" upon receipt of which, the insurance company "would record the change and file it." *Id.* at 503. The insurance company's internal policy dictated that for a change-of-beneficiary to be "accepted in its entirety, it 'must clearly specify the settlement to be in effect at the death of the Insured.'" *Id.* After reviewing Dr. Garcia's request, "while the *primary beneficiary designation* was satisfactory, [an insurance agent] found Dr. Garcia's changes for the *contingent beneficiary* . . . to be 'ambiguous,'" and the insurance company did not accept or record Dr. Garcia's form. *Id.* (emphasis in original). The insurer prepared a new form that modified the contingent beneficiary section, based on what he thought Dr. Garcia intended, mailed it to Dr Garcia, and instructed him to sign and return it to the company if approved. *Id.* Dr. Garcia died shortly thereafter, and the insurance company advised his wife that his change-of-beneficiary request naming her as a 50% beneficiary had not been accepted. *Id.* at 503-04. The court held that the change-of-beneficiary form became effective the date Dr. Garcia signed it, and his wife became an intended beneficiary of the policy, because Dr. Garcia met the "substantial compliance test and had 'done all that he could reasonably have done to perfect the change [of beneficiary].'" *Id.* at 509.

11

Here, the policy provides "[t]he Owner may change the beneficiary without the consent of any such beneficiary. Proper written request will be required. No such change will take effect unless recorded by the Society. When recorded the change will take effect on the date the request was signed . . . ." Robertson Defs.' App. 1 at 30. On September 24, 2004, Dale submitted a written request to change his policy's beneficiary from KKCLC to 50% First National Bank of Burleson and 50% Diann Robertson. Robertson Defs.' App. 4 at 1 (ECF No. 61-4). Royal Neighbors of America refused to record Dale's change-of-beneficiary request because it determined designating First National Bank of Burleson was "not necessary to protect [the bank's] interest." Robertson Defs.' App. 5 at 6 (ECF No. 61-5). However, Royal Neighbors did not state the request was an improper written request, and the policy did not require Dale to obtain the consent of any party—including KKCLC—before designating that party as a beneficiary. *See id.*

KKCLC does not offer any evidence to contradict that Dale's request was a proper written request or to demonstrate that Dale failed to substantially comply with the policy's requirements for requesting a change of beneficiary. Instead, it affirms that "[n]otice was given in writing to Dale Robertson that Royal Neighbors did not record the beneficiary designation received *as required by Policy 0493*." KKCLC Resp. Br. 6, ¶ 9 (ECF No. 69) (emphasis added). Nonetheless, KKCLC contends Royal Neighbors did not arbitrarily or improperly reject Dale's change-of-beneficiary request and that "[i]t is reasonable to conclude from the notes in the file that the communications between [KKCLC], the insurer, and the insured, gave

12

the insurer the impression that the request for a change of beneficiary was a duplication of the effort to assign the interest." *Id.* 6, 8 ¶¶ 9, 15. While this may have been a reasonable conclusion, and Dale's requested change of beneficiary may have been unnecessary to protect the bank's interest, KKCLC does not address whether Dale substantially complied with the policy requirements in requesting a beneficiary change or explain how this otherwise excused Royal Neighbors from performing its contractual duty to record the change once Dale substantially complied with the policy's requirements for requesting a change. *See Martinez*, 174 S.W.3d at 779 ("State Farm's right to question the validity of Ed's change in beneficiary is determined only by the policy's provisions, and its duty was to comply with a request that complied with the policy." (citation omitted)).

Additionally, KKCLC argues "Dale Robertson was given constructive notice [that Royal Neighbors failed to record his change-of-beneficiary request] to his address" (KKCLC Resp. Br. 8, ¶ 16); "the beneficiary designation was discoverable in 2004 when the attempt to change it was tendered" (*id.* 9, ¶ 17); "any claim Dale Robertson's estate might have possessed is barred by the statute of limitations" (*id.*); the discovery rule does not apply to toll that statute of limitations (*id.* 9, ¶ 18); and "the quasi-estoppel argument of the Robertson children is flawed in that it claims a benefit to DiAnn and to [KKCLC] by alleging the erroneous representation of a junior interest to the assignee Southwest Bank" (*id.* 11, ¶ 22). However, the Robertson children do not move for summary judgment on any of these grounds. They do not assert they are entitled to summary judgment because Dale did not

receive notice of the insurance company's refusal to record his change-of-beneficiary request or because Royal Neighbors' failure to record was "undiscoverable." Further, Dale's estate does not move for summary judgment on any separate claim for relief,[2] and the Robertson children do not make any quasi-estoppel argument in their Motion. In their First Amended Crossclaim, the Robertson children, including Chad Robertson, individually and as the independent executor of Dale Robertson's Estate, bring only one claim for a declaratory judgment. First. Am. Crossclaim 6. In connection with that claim, they assert that Diann is "legally or equitably estopped from arguing that KKCLC is the beneficiary under the Policy," and alternatively that "Diann is estopped from arguing that KKCLC is the beneficiary under the Policy through the doctrine of quasi-estoppel." *Id.* 7. The Court need not reach any quasi-estoppel argument, however, because, as stated, "DiAnn does not claim an interest in the proceeds of the interpleader," and KKCLC only makes a claim to the policy's proceeds on its own behalf, not on Diann's. Diann Resp. 1.

Because KKCLC's arguments do not respond to the Robertson children's primary argument—that they are the policy's proper beneficiaries since Royal Neighbors failed to record Dale's change-of-beneficiary request—the Court

---

[2] In fact, the Robertson Defendants' Motion for Summary Judgment requests the Court declare "Chad Robertson, Lori Robertson, Jared Robertson, and Matthew Robertson," not Dale's estate, the "beneficiaries under Royal Neighbors' term life certificate no. 10030439 insuring the life of Dale Evans Robertson[.]" Robertson Defs.' Mot. Summ. J. 2.

deduces that KKCLC presumed the Robertson children had to successfully bring a breach-of-contract claim against Royal Neighbors for that argument to control the determination of the policy's proper beneficiary. Texas law, however, does not support that premise.  In *Martinez* and *Durante*, both courts found the party whose change-of-beneficiary request the insurance company failed to record to be the policy's proper beneficiary, independent of any resolution of a breach-of-contract claim against the insurer. *See Martinez*, 174 S.W.3d at 781; *Durante*, 443 S.W.3d at 509. KKCLC has not raised any argument or pointed to any authority to the contrary.

Accordingly, the Court finds no fact issue exists as to whether Dale substantially complied with the policy requirements to change the policy's beneficiaries such that 50% would go to Diann Robertson and 50% to First National Bank of Burleson. Therefore, Royal Neighbors had a contractual, ministerial duty to record and give effect to Dale's request as of September 24, 2004.

## B.

The Robertson children are entitled to the policy's proceeds because First National Bank of Burleson disclaimed its interest, and Dale and Diann's divorce divested Diann of her interest. Effective February 11, 2008, First National Bank of Burleson executed a release following repayment of KKCLC's debt "relinquish[ing] and release[ing] all right, title and interest in Policy No. 000010030439, issued by Royal Neighbors of America and insuring the life of Dale Evans Robertson[.]"

Robertson Defs.' App. 16 at 14-15 (ECF No. 61-16); *see also* Robertson Defs.' App. 17 at 1 (ECF No. 61-17). And with respect to Diann's interest, Texas Family Code § 9.301 provides,

> If a decree of divorce or annulment is rendered after an insured has designated the insured's spouse as a beneficiary under a life insurance policy in force at the time of rendition, a provision in the policy in favor of the insured's former spouse is not effective unless:
>
> (1)    the decree designates the insured's former spouse as the beneficiary;
>
> (2)    the insured redesignates the former spouse as the beneficiary after rendition of the decree; or
>
> (3)    the former spouse is designated to receive the proceeds in trust for, on behalf of, or for the benefit of a child or a dependent of either former spouse.

Tex. Fam. Code § 9.301(a). None of these contingencies occurred, and Diann herself claims no interest in the policy's proceeds. Robertson Defs.' Mot. Summ. J. Br. 14; Diann Resp. 1. Therefore, the policy named no valid beneficiary at the time of Dale's death; in which case, the policy instructs "payment of the proceeds shall be made as provided in the by-laws . . . in effect at the time of the Insured's death." Robertson Defs.' App. 1 at 30.

Where there is no valid beneficiary listed, Royal Neighbors' by-laws dictate the proceeds should go:

> (i) to the member's spouse (ii) if no spouse, to the member's child or children equally, and in case there are deceased children or child, the lawful issue of such shall take the share of such deceased parent, per stirpes; (iii) if no children or child or lawful issue of any deceased

16

> children or child, to the member's mother; (iv) if no
> mother, to the member's father; (v) if no father, to the
> member's surviving brothers and sisters equally; and (vi)
> if no surviving brothers or sisters, to the executors or
> administrators of the estate of the member provided that,
> in the case of clause (vi), if the owner of the certificate is
> other than the member, such benefits shall be payable to
> such owner.

ROYAL NEIGHBORS OF AMERICA, BYLAWS AND ARTICLES OF INCORPORATION Art. IX
§ 2, at 20 (2014), https://www.royalneighbors.org/docs/default-source/default-document-library/2014-bylaws.pdf. Dale Robertson had no spouse at the time of his death; thus, according to the by-laws, Dale's surviving children, the Robertson children, are entitled to equal shares of the policy's proceeds. Robertson Defs.' App. 16 at 13. Accordingly, the Court should grant the Robertson children's Motion for Summary Judgment; declare Chad Robertson, Lori Robertson, Jared Robertson, and Matthew Robertson the beneficiaries under Royal Neighbors' term life certificate no. 10030439 insuring the life of Dale Evans Robertson; and direct the Clerk to pay the life-insurance proceeds in the Court's registry, plus interest, to Chad Robertson, Lori Robertson, Jared Robertson, and Matthew Robertson in equal payments.

## II. KKCLC's Motion for Summary Judgment

KKCLC moves for summary judgment against the Robertson children[3] and asks the Court to declare KKCLC "appropriately the beneficiary of the policy in

---

[3] In its Motion, KKCLC also moves for summary judgment with respect to Royal Neighbors; however, the Court has already dismissed all claims against Royal Neighbors. KKCLC Mot. Summ. J. 1.

question" and "entitled to all the proceeds net of the attorney's fees awarded to Royal Neighbors of America." KKCLC Mot. Summ. J. 2. Specifically, KKCLC (1) requests a declaratory judgment with respect to the parties' rights concerning the policy's proceeds; (2) asserts the Robertson children have no basis to sue KKCLC; (3) argues that, though Diann Robertson is one of KKCLC's members, KKCLC is not disqualified as a beneficiary under Texas law; (4) contends "[t]he statute of limitations prevents the review of contractual obligation more than 10 years ago"; and (5) argues "the Robertson children have failed to plead that either DiAnn or [KKCLC] intentionally misrepresented or concealed facts," and, therefore, cannot succeed on a theory of equitable estoppel or quasi-estoppel. KKCLC Mot. Summ. J. Br. 12-18 (ECF No. 55). The Court addresses these points in turn.

First, KKCLC requests "the Court . . . declare the rights of the parties with respect to the proceeds of the insured's policy." *Id.* 13. However, because the Court finds no fact issue exists as to whether Dale substantially complied with the policy requirements to change the policy's beneficiaries to Diann Robertson and First National Bank of Burleson, it also finds Royal Neighbors had a contractual, ministerial duty to record and give effect to Dale's request as of September 24, 2004. Accordingly, for the reasons explained above, the Robertson children, and not KKCLC, are entitled to the policy's proceeds.

Second, KKCLC appears to assert that the Robertson children have no standing to sue KKCLC for the same reasons they lack standing to sue Royal Neighbors. The Court previously found the Robertson children could not sue Royal

18

Neighbors for breach of contract because they were not a party to the contract—Dale's policy with Royal Neighbors. FCR 15-16; *see also MCI Telecomms Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999) (Under Texas law, "a presumption exists that parties contracted for themselves unless it 'clearly appears' that they intended a third party to benefit from the contract." (citation omitted)). But the Robertson children do not assert claims, such as breach of contract, against KKCLC. Royal Neighbors filed its Complaint in Interpleader on August 1, 2018, naming the Robertson children as defendants and asking the Court to adjudicate the defendants' rights to the policy's proceeds. Interpleader 1, 4 (ECF No. 1). Accordingly, the Robertson children's only crossclaim against KKCLC is a declaratory-judgment claim, requesting the Court declare they are entitled to the policy's proceeds. *See* First Am. Crossclaim. Thus, the Court finds they have standing to bring this claim.

Next, the parties do not dispute that Texas law applies to interpretation of the policy, as dictated by the policy. KKCLC App. 11 at 30 ("Applicable State Law: The rights or obligations of the Owner or any person claiming under this certificate shall be governed by the laws of the state in which this certificate is delivered."); *Id.* 11 at 34 ("Statement of Certificate" listing Texas address for insured and insurance agent). However, because the Court determines that the Robertson children are entitled to the policy's proceeds, it need not consider whether Diann Robertson's ownership of KKCLC disqualifies KKCLC as a beneficiary under Texas law.

Fourth, KKCLC contends that "[w]ith respect to the request for declaratory judgment consistent with Crossclaim paragraph 27(a), that request is without basis, but should be denied due to a statute of limitations for contractual actions under the Tex. Civ. Prac. [& Rem. Code] Section 16.004(a)(3)." KKCLC Mot. Summ. J. Br. 16. KKCLC states that under Texas law, "the statute of limitations for breach of contract claims is four years," and "for negligence is either two or four years[.]" *Id.* 17. But "the Robertson children have not alleged breach of contract or negligence claims against [KKCLC]." Robertson Defs.' Resp. Br. 14 (ECF No. 63). Therefore, the Court need not consider whether any negligence or breach-of-contract claim would be time barred.

Fifth, KKCLC argues the Robertson children have not properly pleaded a claim for equitable estoppel against Diann Robertson or KKCLC because they have not alleged that "DiAnn or [KKCLC] intentionally misrepresented or concealed facts related to the [policy's] beneficiaries[.]" KKCLC Mot. Summ. J. Br. 17. KKCLC further argues that "the [a]rgument for quasi-estoppel fails" because the Robertson children have not pleaded "that either DiAnn or [KKCLC] accepted benefit from an inconsistent position." *Id.* 18. While the Robertson children's only claim asserted in their First Amended Crossclaim is a declaratory-judgment claim, they assert a "defense" stating "Diann is legally or equitably estopped from arguing that KKCLC is the beneficiary under the Policy," or, "[a]lternatively, Diann is estopped from arguing that KKCLC is the beneficiary under the Policy through the doctrine of quasi-estoppel." First Am. Crossclaim 7. This defense, however, seeks to prevent

Diann from making arguments on behalf of KKCLC—it does not concern KKCLC's conduct. Because KKCLC, not Diann, moves for summary judgment, KKCLC's arguments with respect to equitable estoppel and quasi-estoppel are not relevant here, and the Court need not consider them. *See* KKCLC Mot. Summ. J.

Accordingly, KKCLC is not entitled to a declaratory judgment in its favor, and the Court should DENY its Motion for Summary Judgment. The parties agree, however, that "the Robertson children are not entitled to recover attorney fees from [KKCLC] on a declaratory judgement [sic] action alone." KKCLC Mot. Summ. J. Br. 13; *see also* Robertson Defs.' Resp. Br. 5 ("The Robertson children agree that attorney's fees are not recoverable between the defendants on the declaratory judgement actions seeking the Policy proceeds.").

## **RECOMMENDATION**

For the foregoing reasons, the Court should DENY KKCLC's Motion for Summary Judgment (ECF No. 54), GRANT the Robertson children's Motion for Partial Summary Judgment (ECF No. 59), and declare the Robertson children the proper beneficiaries of the policy's proceeds.

**SO RECOMMENDED**.

February 28, 2020.

_____

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).